# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TWYLA TORREGANO, CLEMENT TORREGANO, JR., AND ALL OTHERS SIMILARLY SITUATED | CIVIL ACTION |
| VERSUS | NO: 14-293 |
| SADER POWER, LLC, ET AL | SECTION: "S" (3) |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that plaintiffs' **Motion for Award of Attorneys' Fees Expenses**, **and Costs** (Rec. Doc. 32) is **GRANTED**.

The court held a final settlement fairness hearing on February 20, 2019, at which it approved the settlement in the captioned case. In connection with the settlement, plaintiffs have moved for an award of attorneys' fees in the amount of $1,492,500.00. Defendants do not oppose the motion.

## BACKGROUND

This matter arises from a class action brought by the class representatives and approximately 2500 other individuals who had solar panel array systems installed by defendants Sader Power, LLC and/or Sader Power Enterprises (collectively, "Sader"), and entered into a standardized maintenance agreement for the installation, maintenance, and monitoring of the Solar Power Arrays with Griswold Power, LLC ("GP"). The class representatives asserted claims for violations of the Consumer Leasing Act, breach of contract, and other claims arising from defendants' installation of the solar panel arrays, the terms of the maintenance agreements, and

representations made to them by defendants. GP denied the allegations, but agreed to a class settlement with the class defined as: "All persons who entered into a Solar Power Maintenance Agreement with Griswold, and all current owners of property in Louisiana upon which Solar Panel Arrays owned by Griswold are installed."

The settlement agreement transfers ownership of the solar panels to the class members, forgoes outstanding monthly payments, and cancels class members' obligations to pay continuing maintenance contract fees.[1] The value of the settlement is between $12,500,000 and $25,000,000. The value of the settlement comprises forgone amounts due owed by class members amounting to approximately $1,880,000, the value of the solar panel array system transferred from Sader to the class members, and future maintenance contract fees. Assuming a value of $10,600.00 per solar array system, the total value of the transferred systems is $23,304,176.18.[2] Added to the foregone receivables, the settlement value exceeds $25,000,000.00 before accounting for future payments. However, if a more conservative value of $5000.00 per solar array system is assumed, the value of the settlement is approximately $12,500,000. Thus, the court analyzes the fee request based on a settlement value range of $12,500,00.00 to $25,000,000.00.

---

[1] The settlement agreement is made with GP, but it releases all defendants.

[2] This figure was arrived at based on GP's projected revenue calculation. Valuing the solar array systems themselves is difficult because the system value includes several variables, such as the value of the equipment itself, and the average monthly cost savings it produces and will produce in the future. Thus, counsel has suggested the systems be valued on based on GP's projected revenue calculation. Applying that analysis, if all 2,194 customers under contracted opted to purchase the solar arrays 72 months from the Commercial Operation Date, the total revenue to GP would be $23,304,176.18, or $10,600.00 per system.

On November 8, 2018, the court granted preliminary approval of the proposed class action settlement agreement, based on its finding that the requirements of Rule 23(a) and 23(b)(3) were met. Following notice to class members, sent to all potential members who could be identified through reasonable effort, the court held the final fairness hearing, at which it approved the settlement. The approval was based on the court's conclusion that the large number of potential class members made joinder impracticable, and because the maintenance agreement is a standardized form, the class representatives' claims are typical of potential class members' claims. For the same reason, issues of law and fact common to all class members predominate over individual issues. Further, the court determined that plaintiffs' counsel would adequately represent the proposed class, and it would be uneconomical for the class members for the claims to be litigated individually. Thus, a class action was determined to be superior to other methods for resolving this case.

The settlement was negotiated at arm's length by experienced counsel, which occurred over a two-year period and included a full-day mediation session. Class counsel gained extensive knowledge by interviewing potential witnesses and reviewing voluminous documents from public sources and from the defendants through discovery. As well, in the absence of settlement, the class members would be exposed to unnecessary complexity, expense, and a lengthy trial. Accordingly, the settlement was reached under conditions that indicate that it is fair, reasonable, and adequate.

**APPLICABLE LAW**

The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers

a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980). Class counsel may not bill the class directly for their services but must petition the court for an award of fees reasonable under the circumstances and in light of the monetary benefit created for the class. 3 H. Newberg, A. Conte, NEWBERG ON CLASS ACTIONS § 14.02 (3d ed. 1992). Even when the fee award is agreed upon, attorneys' fees and costs, authorized by law or the parties' agreement, must be reasonable. Fed. R. Civ. P. 23(h).

In calculating fees, courts employ either the percentage method or the lodestar method. Union Asset Mgmt. Holding A.G. v. Dell, Inc., 669 F.3d 632, 642–43 (5th Cir. 2012). Under the percentage method, the court awards fees as a reasonable percentage of the common fund; under the lodestar method, the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier. Id. In Union Asset Management, the Fifth Circuit explicitly stated: "We join the majority of circuits in allowing our district courts the flexibility to choose between the percentage and lodestar methods in common fund cases, with their analyses under either approach informed by the Johnson[3] considerations." Id. at 644. "Furthermore, the United States Supreme Court has approved the percentage method in common fund cases, but has never formally adopted the lodestar method in common fund cases." In re Vioxx Prod. Liab. Litig., No. MDL 1657, 2018 WL 4613941, at *6 (E.D. La. Sept. 26, 2018)(citing Camden I Condo. Ass'n v. Dunkle, 946 F.2d 768, 773–74 (11th Cir. 1991) (interpreting Blum v. Stenson, 465 U.S. 886, 900

---

[3] Johnson v. Ga. Highway Exp., Inc., 488 F.2d 714, 718 (5th Cir. 1974).

n.16 (1984), as the Supreme Court's "acknowledgment" of the percentage method in common fund cases); In re Prudential-Bache Energy Income P'ships Sec. Litig., MDL No. 888, 1994 WL 150742 (E.D. La. Apr. 13, 1994) (tracing the history of the various methods)). "The percentage method provides more predictability to attorneys and class members or plaintiffs, encourages settlement, and avoids protracted litigation for the sake of racking up hours, thereby reducing the time consumed by the court and the attorneys." Id. at *5 (citations omitted). For this reason, many district courts in this circuit have simply applied the percentage fee method in common fund cases. Braud v. Transp. Serv. Co. of Illinois, 2010 WL 3283398, at *8 (E.D. La. Aug. 17, 2010)(citing In re Harrah's Entm't, Inc.,1998 WL 832574, at *1 (E.D. La. Nov. 25, 1998)(citing In re Catfish Antitrust Litig., 939 F. Supp. 493, 500 (N.D. Miss.1996); In re Prudential-Bache Energy Income P'ships Secs. Litig., No. MDL 888, 1994 WL 150742, at *4 (E.D. La. Mar.7, 1994)); Turner v. Murphy Oil USA, Inc., 422 F. Supp.2d 676 (E.D. La. 2006) (applying percentage fee method to compute common benefit fees in class action);Faircloth v. Certified Fin., Inc., 2001 WL 527489 (E.D. La. May 16, 2001) (same).

No general rule exists as for what is a reasonable percentage of a common fund. Fifty percent "is the upper limit on a reasonable fee award to assure that fees do not consume a disproportionate part of the recovery obtained for the class, though somewhat larger percentages are not unprecedented." In re Combustion, Inc., 968 F. Supp. 1116, 1133 (W.D. La. 1997)(citing Camden I Condominium Assn. v. Dunkle, 946 F.2d 768 (11th Cir.1991)(other citations omitted). In the Fifth Circuit, district courts have often awarded percentages of approximately one-third. Id. (citations omitted).

## APPLICATION OF LAW TO FACTS

Thus, in keeping with the law of this circuit and at the request of counsel, the court will use the percentage method, as well as apply the factors set forth in Johnson v. Ga. Highway Exp., Inc., 488 F.2d 714, 718 (5th Cir. 1974), to ensure that the fee awarded is reasonable.

The fee requested in this case represents 6-12% of the value of the total recovery for plaintiffs. Because awards in this circuit in the range of 33% are commonplace, this amount appears to be reasonable on its face.

The Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. Johnson v. Ga. Highway Exp., Inc., 488 F.2d 714, 718 (5th Cir. 1974), overruled on other grounds by Blanchard v. Bergeron, 489 U.S. 87, 90 (1989). However, "[e]ven though it is apparent that the Johnson factors must be addressed to ensure that the resulting fee is reasonable, not every factor need be necessarily considered. If a district court has articulated and clearly utilized the Johnson framework as the basis of its analysis, 'we will not require the trial court's findings to be so excruciatingly explicit in this area of minutiae that decisions of fee awards consume more paper than did the cases from which they arose.'" In re Combustion, Inc., 968 F.

Supp. 1116, 1135 (W.D. La. 1997)(citing Louisiana Power & Light v. Kellstrom, 50 F.3d 319, 331 (5th Cir.1995).

With respect to the time and labor required, the novelty and difficulty of the legal issues, and the skill required to perform the legal service properly, this matter took over four years, involved multiple depositions, briefing for the arbitration, and a mediation. As well, the novelty and difficulty of the questions involved and the skill required to achieve a favorable result are supported by the record.

As for preclusion of other employment by the attorney as a result of taking the case, class counsel has represented that their efforts in the management of this class action substantially infringed upon, and at times curtailed, the opportunity to accept other employment. It also reduced the time available for their regular practices and participate in other litigation. As well, counsel has represented that matters involved this case often required immediate attention and completion within a very short period of time.

The customary contingency fee for personal injury cases, which are much more straightforward than this class action, is typically in the neighborhood of 33% (and possibly higher). Likewise, percentage awards of 50% have been approved in some class actions. Assuming a conservative value of $5000.00 per solar array system, the value of the settlement would be approximately $12,500,000, and the fee award in the instant case works out to 12% at a maximum.

As discussed above, class counsel negotiated a settlement valued at $12,500,000 to $25,000,000. As part of the settlement agreement, all of the 2000+ class members now own their

solar panel arrays free and clear, at a value of approximately $5000-$10,000 each. As well, the class members are relieved of paying service and maintenance fees going forward which amount to several million dollars, and relieved of paying approximately $1,881,000 which was due and owing as of the time of the settlement. The court finds that the success of the attorneys, as supported by the record, reflects the ability of the attorneys.

As for the undesirability of the case, in addition to the risks inherent in a class action, this case presented unusual issues. There also was a valid arbitration clause to overcome, so class counsel assumed significant risks taking this case.

For all of the foregoing reasons, the court finds that the <u>Johnson</u> factors support an award of attorneys' fees in the range of 6-12%. Accordingly,

**IT IS ORDERED** that plaintiffs' **Motion for Award of Attorneys' Fees Expenses**, and Costs (Rec. Doc. 32) is **GRANTED**, and class counsel is awarded $1,492,500.00 in attorneys' fees.

New Orleans, Louisiana, this  28th  day of February, 2019.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**